IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DEFLECTO, LLC, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) Case No. 13-0116-CV-W-ODS ) |
| DUNDAS *JAFINE INC., | ) ) |
| Defendant. | ) |

**ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO EXCLUDE OPINIONS AND TESTIMONY OF MARC VIANELLO**

Defendant Dundas Jafine Inc. ("Defendant") moves to exclude the opinions and testimony of Marc Vianello ("Vianello"). Doc. #130. The Motion is granted in part and denied in part.

## I. Legal Standard

The district court must make a "preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology can be applied to the facts in issue." *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592-93 (1993). In determining the admissibility of expert testimony, the Court uses the following three-part test:

> First, evidence based on scientific, technical, or other specialized knowledge must be useful to the finder of fact in deciding the ultimate issue of fact. This is the basic rule of relevancy. Second, the proposed witness must be qualified to assist the finder of fact. Third, the proposed evidence must be reliable or trustworthy in an evidentiary sense, so that, if the finder of fact accepts it as true, it provides the assistance the finder of fact requires.

*Lauzon v. Senco Products, Inc.*, 270 F.3d 681, 686 (8th Cir. 2001) (internal quotations and citations omitted). The third requirement is based on Federal Rule of Evidence 702, which permits expert opinions at trial if: "(1) the testimony is based upon sufficient

facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the expert has reliably applied the principles and methods, and (3) the expert has reliably applied the principles and methods to the facts of the case."

## II. Discussion

### A.

Vianello is a licensed Certified Public Accountant. Doc. #138-1. The American Institute of Certified Public Accountants has certified Vianello in financial forensics and accredited him in business valuations. *Id.* Vianello previously has provided trial and deposition expert testimony in several patent cases. *Id.* Additionally, Vianello often spends over fifty percent of his time on patent litigation matters. Doc. #138-2, pages 5-6. Thus, the Court finds that Vianello is qualified to testify about damages.

### B.

The Patent Act limits the amount of damages Plaintiff can recover "to those acts of infringement that occurred after the patentee gave the alleged infringer 'notice of infringement.'" *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001) (citing 35 U.S.C. § 287). Notice occurs either by "constructive notice, which is accomplished by marking the article with the patent number, or [by] actual notice." *Id.* Actual notice requires "'affirmative communication to the alleged infringer of a specific charge of infringement by a specific accused product or device.'" *Id.* (citing *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed Cir. 1994)).

Defendant maintains Vianello misapplied the law in determining pre-suit damages. Specifically, Defendant argues Plaintiff admits it did not provide constructive notice to Defendant by marking its products, and yet Vianello analyzes damages based on a constructive notice start date. Additionally, Defendant points to Vianello's deposition, in which he testified that actual notice occurred at the time of filing suit, but in his Report, Vianello did not analyze damages beginning on that date. Instead, Vianello made a damages analysis based on actual notice occurring on August 1, 2012, when Plaintiff sent a cease and desist letter to Defendant.

2

The Court finds Defendant's arguments are misdirected. Vianello is not being proffered as an expert who determines *when* damages begin to accrue. Rather, Vianello is being proffered to determine the *amount* of damages that have accrued. In Vianello's Report, he provides alternate start dates: one based on constructive notice and one based on actual notice occurring when Plaintiff sent Defendant a cease and desist letter. Doc. #141, pages 54-59. Vianello provided these alternate start dates in anticipation of the Court or the jury potentially finding Plaintiff did not achieve constructive notice. Accordingly, Defendant's arguments go to the weight of Vianello's opinions, not their admissibility.

Defendant also notes that in his deposition, Vianello incorrectly testified that a marking defense is the same thing as a laches defense. However, Defendant does not state how this confusion would affect Vianello's damages analysis. If Defendant successfully established a marking defense, then Plaintiff would only be entitled to damages after actual notice occurred. If Defendant successfully established a laches defense, then Plaintiff would not be entitled to any pre-suit damages. Both defenses affect only the applicable start date; they do not affect Vianello's determination of the amount of damages to which Plaintiff is entitled after the applicable start date. Again, Vianello is not being proffered as an expert on the applicable start date. He is being offered as an expert in determining the amount of damages to which Plaintiff is entitled. Thus, Defendant's argument does not serve as a basis to exclude Vianello's testimony.

Finally, Defendant argues Vianello's opinion regarding pre-suit damages is unreliable because, in his deposition, he stated Plaintiff was entitled to damages for more than six years prior to the lawsuit being filed. Defendant notes the Patent Act only permits pre-suit damages of up to six years prior to the lawsuit being filed. The Court finds that while Vianello may have made these statements in his deposition, his Report does not provide a damages analysis with a start date of more than 6 years prior to the date the lawsuit was filed. Thus, this is not a basis to exclude Vianello's testimony.

## C.

"To recover lost profits, the patent owner must show 'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits."

3

*Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). The "*Panduit* Test" is an "accepted…,but non-exclusive, way for a patentee to prove entitlement to lost profit damages." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). Under the *Panduit* Test, "a patentee [must] establish: (1) the demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made." *Id.* (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978)). "A showing under *Panduit* permits a court to reasonably infer that the lost profits claimed were in fact caused by the infringing sales…" *Id.* However, "a patentee need not negate every possibility that the purchaser might not have purchased a product other than its own, absent infringement. The patentee need only show that there was a reasonable probability that the sales would have been made 'but for' the infringement." *Id.*

Defendant argues Vianello did not correctly apply the *Panduit* Test to the facts in this case. In support of this position, Defendant provides its own analysis of the evidence pursuant to the *Panduit* Test. In essence, Defendant merely disagrees with the results of Vianello's analysis. This type of disagreement is not a proper basis to exclude Vianello's testimony.

Defendant also argues Vianello's lost profits testimony should be excluded because he bases his conclusion that non-infringing alternatives do not exist in the marketplace on Marshall Honeyman's ("Honeyman") testimony. Defendant argues Vianello's reliance on Honeyman is unreliable, because Honeyman's testimony regarding infringement is inadmissible as he is not qualified as a technical expert. The Court agrees Honeyman is not qualified as a technical expert; and thus, the Court excluded Honeyman from opining on technical matters such as infringement. Doc. #174. Notwithstanding Vianello's reliance on Honeyman's inadmissible opinion, Plaintiff may present additional evidence that non-infringing alternatives do not exist in the marketplace. Thus, the Court will not exclude Vianello's testimony on this basis.

4

**D.**

A patentee is entitled to damages for lost profits it would have made on "unpatented components typically sold with a patented item" but for the alleged infringement. *Juicy Whip, Inc. v. Orange Bang, Inc.*, 382 F.3d 1367, 1371 (Fed. Cir. 2004); *see also DePuy Spine, Inc. v. Medtronic Sofamor Danek, Inc.*, 567 F.3d 1314, 1333 (Fed. Cir. 2009); *American Seating Co. v. USSC Group, Inc.*, 541 F.3d 2162, 1267 (Fed. Cir. 2008); *Rite-Hite Corp. v. Kelley Co.*, 56 F.3d 1538, 1549 (Fed. Cir. 1995). In order to recover on sales of these unpatented components, "the unpatented components must function together with the patented component in some manner so as to produce a desired end product or result. All the components together must be analogous to components of a single assembly or be parts of a complete machine, or they must constitute a function unit." *Rite-Hite Corp.*, 56 F.3d at 1550. This type of sale often is referred to as a "convoyed sale." *American Seating Co.*, 514 F.3d at 1267.

Defendant maintains Vianello's testimony regarding convoyed sales should be excluded for two reasons. First, Defendant claims Vianello stated the incorrect legal standard for convoyed sales. Vianello does no such thing. Defendant points to Vianello's deposition testimony in which he states a plaintiff would be entitled to damages for convoyed sales if "the plaintiff can demonstrate…a reasonable probability that but for the infringement the plaintiff would have made the sales." Doc. #130, page 12. Defendant maintains that this is the legal standard for lost profits, not the legal standard for convoyed sales. Further, Defendant maintains the legal standard for convoyed sales is enumerated in *Rite-Hite Corp. v. Kelley Co.* Defendant's argument misses the mark. A plaintiff can recover lost profits on patented products and lost profits on unpatented products that satisfy the *Rite-Hite* standard. For both types of products, the Court applies a lost profits analysis. The *Rite-Hite* standard does not determine the amount of damages available for recovery. Rather, it determines the unpatented products that are entitled to a lost profits analysis.

Second, Defendant contends Vianello has incorrectly determined that certain unpatented products are convoyed products, when, in Defendant's view, many of these unpatented products do not satisfy the *Rite-Hite* standard. Defendant maintains that Vianello's incorrect determinations affect both his lost profits analysis and his

5

reasonable royalty analysis.  Defendant's disagreement over whether certain unpatented products are convoyed products is not grounds for exclusion.  Instead, this type of disagreement goes to the weight of Vianello's testimony.

### E.

Defendant seeks to exclude Vianello's testimony regarding future damages.  First, Defendant maintains this testimony should be excluded because future damages ordinarily are not available when a plaintiff is seeking an injunction.   Here, Plaintiff requested various forms of relief, as Plaintiff is permitted to do.  *See* Doc. #33, pages 7-8.  In the event the Court does not enter an injunction against Defendant, Vianello's testimony regarding future damages would be relevant.

Second, Defendant attacks Vianello's opinion because he initially examined unreliable forecasts from the National Association of Home Builders and the Association of Home Appliance Manufacturers.  However, Vianello acknowledged the weakness of these forecasts and stated he "rejected these forecasts as a basis of predicting future sales for Deflecto's damages."  Doc. #141, page 55.

Third, Defendant takes issue with Vianello's use of a software program to determine future damages. But Defendant does not specify what is wrong with the software program Vianello used.  The mere use of a software program is not fundamentally unreliable; and thus, Defendant has not presented a sufficient basis to exclude Vianello's testimony.  Defendant also faults Vianello for disagreeing with some of the results the software program produced.  However, Vianello is a qualified expert, and he used his expertise to determine that in this instance, the software program did not produce what he believed were the most accurate projections of future damages.  Consequently, Defendant's concerns go to the weight of Vianello's testimony, rather than its admissibility.

### F.

Finally, Vianello maintains Plaintiff is entitled to "transition damages."  In support of this argument, Vianello asserts Plaintiff rolled out "the Everbilt private label dryer venting and air distribution products for Home Depot" in 2014 and the cost for this

transition included "an inventory buy-back cost of about $1,114,000."  Doc. #141, pages 74-75.  Vianello concludes that "but for Dundas' infringing competition, Deflecto would have been able to manage its Everbilt launch in a way that would have avoided the inventory buy-back cost."  *Id.* at 75.

However, Plaintiff must establish why damages are legally available.  Here, Plaintiff cites no legal authority under which it is entitled to "transition damages." Accordingly, to the extent Vianello opines on "transition damages," his testimony is excluded.

IT IS SO ORDERED.

DATE: November 4, 2015

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT