IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

DEFLECTO, LLC,                          )
                                        )
                    Plaintiff,          )
                                        )
vs.                                     )          Case No. 13-0116-CV-W-ODS
                                        )
DUNDAS *JAFINE INC.,                    )
                                        )
                    Defendant.          )

## ORDER AND OPINION GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

Pending are Defendant Dundas Jafine Inc.'s ("Defendant") six motions for summary judgment. Doc. #112, #115, #116, #117, #118, #134. The motions are granted in part and denied in part.

## I.    BACKGROUND

This is a patent infringement suit. Plaintiff Deflecto LLC ("Deflecto") is a manufacturer, seller, and distributor of dryer vents and venting-related products. It owns two patents: (1) the "Exhaust Vent with External Guard," Patent No. 5,722,181 ("the '181 Patent"), and (2) the "Hooded Exhaust Vent," Patent No. 5,916,023 ("the '023 Patent"). Defendant Dundas *Jafine Inc. ("Dundas Jafine") also manufactures and sells dryer vents, including the ProMax, Modified ProMax, and ProGard (the "Accused Products").

Deflecto filed the instant action on February 6, 2013. On June 25, 2013, it filed its Second Amended Complaint, which raises four counts. Counts I and II allege that Dundas Jafine's dryer vents infringe upon the '023 and '181 patents. Count III raises a Lanham Act claim, in which Deflecto alleges Dundas Jafine is committing acts of unfair competition and deceptive advertising by displaying illustrations and photos on the Modified ProMax packaging that are inconsistent with the visual aspects of the Product. Count IV asserts a common law unfair competition claim.

## II. <u>LEGAL STANDARD</u>

A moving party is entitled to summary judgment on a claim only if there is a showing that "there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See generally Williams v. City of St. Louis*, 783 F.2d 114, 115 (8th Cir. 1986). "[W]hile the materiality determination rests on the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Wierman v. Casey's Gen. Stores*, 638 F.3d 984, 993 (8th Cir. 2011) (quotation omitted). In applying this standard, the Court must view the evidence in the light most favorable to the non-moving party, giving the party the benefit of all inferences that may be reasonably drawn from the evidence. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 588-89 (1986); *Tyler v. Harper*, 744 F.2d 653, 655 (8th Cir. 1984), cert. denied, 470 U.S. 1057 (1985). However, a party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of the…pleadings, but…by affidavits or as otherwise provided in [Rule 56], must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

## III. <u>DISCUSSION</u>[1]

### A. *Invalidity of the '181 and '023 Patents*

Defendant asserts that Plaintiff's '181 and '023 patents are invalid for a variety of reasons. Patents are presumed to be valid. *U.S. Gypsum Co. v. Nat'l Gypsum Co.*, 74 F.3d 1209, 1212 (Fed Cir. 1996). Defendant must demonstrate by clear and convincing evidence that a patent is invalid. *Id.*

---

[1] Plaintiff renews its objection to Defendant's filing of six separate summary judgment motions. The Court is not pleased that Defendant did not seek leave to file separate motions. Nonetheless, the Court overrules Plaintiff's objection.

Case 4:13-cv-00116-ODS   Document 177   Filed 11/04/15   Page 2 of 27

### 1. Obviousness

Defendant claims Plaintiff's '181 and '023 patents are invalid because they were obvious in light of prior art. A patent is invalid due to obviousness when "the difference between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S 398, 406 (2007). "Obviousness is a question of law based on underlying factual determinations," which include, "(1) the scope and content of the prior art; (2) the level of ordinary skill in the art; (3) the differences between the claimed invention and the prior art; (4) the extent of any proffered objective indicia of nonobviousness, sometimes termed secondary considerations." *Rockwell Int'l Corp. v. U.S.*, 147 F.3d 1358, 1362 (Fed. Cir. 1998). Secondary considerations such as "commercial success, long felt but unsolved needs, failure of others, etc., might be utilized to give light to the circumstances surrounding the origin of the subject matter sought to be patented." *KSR Int'l Co.*, 550 U.S. at 406.

"A flexible teaching, suggestion, or motivation test can be useful to prevent hindsight when determining whether a combination of elements known in the art would have been obvious." *Norgren Inc. v. Int'l Trade Com'n*, 699 F.3d 1317, 1322 (Fed. Cir. 2012). The "teaching, suggestion, or motivation" test provides that "a patent claim is only proved obvious if the prior art, the problem's nature, or the knowledge of a person having ordinary skill in the art reveals some motivation or suggestion to combine the prior art teachings." *KSR Int'l Co.*, 550 U.S. at 399. However, "'[t]he obviousness analysis cannot be confined' to a rigid application of the teaching, suggestion, or motivation test." *Norgren Inc.*, 699 F.3d, at 1322-23 (citing *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S 398, 419 (2007)). Rather, "the common sense and ordinary creativity of a person having ordinary skill in the art are also part of the analysis." *Id.*

Here, Defendant fails to demonstrate whether a person having ordinary skill in the art would find the patent obvious. While Defendant frequently states in its opening briefs what would have been obvious or well-known to one of ordinary skill in the art, Defendant does not provide any evidentiary support for this argument. Apparently recognizing this mistake, Defendant makes occasional citations to its expert, Dr. Terry

Faddis ("Faddis"), in its Reply Briefs as one of ordinary skill in the art. "If a party fails to properly support an assertion of fact…the court *may*…give [the party] an opportunity to properly support or address the fact." Fed. R. Civ. P. 56(c) (emphasis added). The Court declines to give Defendant this opportunity. It would be unfair to allow Defendant to omit supporting facts in its opening briefs, then to permit Defendant to correct its numerous errors in its Reply Briefs.

Consequently, Defendant has failed to satisfy its burden to provide "clear and convincing" evidence that the patents are invalid. Summary judgment is denied on this issue.

### 2.   Written Description Requirement

Defendant contends the '181 and '023 patents are invalid because they fail to satisfy the written description requirement.

Pursuant to 35 U.S.C. §112(a), a patent's specification must contain a written description of the invention. *See Carnegie Mellon Univ.  v. Hoffmann-La Roche Inc.*, 541 F.3d 1115, 1121 (Fed. Cir. 2008). "A patentee can lawfully claim only what he has invented or described, and if he claims more, his patent is void." *Id.* at 1122 (internal quotations and citations omitted). To satisfy the written description requirement, a patentee "must convey with reasonable clarity to those skilled in the art…that he or she was in possession of the invention…and demonstrate that by disclosure in the specification of the patent." *Id.*; *see also LizardTech, Inc. v. Earth Res. Mapping, Inc.*, 424 F.3d 1336, 1344-45 (Fed. Cir. 2005). A patentee does not have "to describe exactly the subject matter claimed." *Union Oil Co. of California v. Atl. Richfield Co.*, 208 F.3d 989, 997 (Fed. Cir. 2000). Nor is it necessary for the patentee "to spell out every detail of the invention in the specification; only enough must be included to convince a person of skill in the art that the inventor possessed the invention and to enable such a person to make and use the invention without undue experimentation." *LizardTech, Inc.*, 424 F.3d at 1345. Finally, "a broad claim is invalid when the entirety of the specification clearly indicates that the invention is of a much narrower scope." *Cooper Cameron Corp. v. Kvaerner Oilfield Prods., Inc.*, 291 F.3d 1317, 1323 (Fed. Cir. 2002).

Here, Defendant fails to demonstrate what the patents' specifications would convey to someone with ordinary skill in the art. Defendant only cites occasionally to its expert, Faddis, as one of ordinary skill in the art in its Reply Suggestions in Support of its Motion for Summary Judgment of Invalidity of the '181 Patent. Doc. #159. Again, the Court exercises its discretion and declines to give Defendant the opportunity to support this assertion in its Reply Suggestions.

Defendant also cites to Marshall Honeyman ("Honeyman") in support of its argument, but the Court has excluded Honeyman's testimony to the extent he opines on invalidity issues that require the analysis of one of ordinary skill in the art. Doc. #174, *see also Sundance, Inc. v. DeMonte Fabricating Ltd.*, 550 F.3d 1356 (Fed. Cir. 2008). Thus, Honeyman's testimony does not provide any support for Defendant's position.

Defendant has not met its burden to provide "clear and convincing" evidence that the patents are invalid, and summary judgment is denied on this issue.


3.  Public Use Bar

Defendant maintains Plaintiff's '023 patent is invalid because it was publicly disclosed more than one year prior to the critical date of the patent.

A person is entitled to a patent unless the invention was in public use more than one year prior to the date of the application for the patent. 35 U.S.C. § 102; *see also Netscape Comms. Corp. v. Konrad*, 295 F.3d 1315, 1319-20 (Fed. Cir. 2002). "A public use includes any public use of the claimed invention by a person other than the inventor who is under no limitation, restriction or obligation of secrecy to the inventor." *Clock Spring, L.P. v. Wrapmaster, Inc.*, 560 F.3d 1317, 1325 (Fed. Cir. 2009) (internal quotations and citations omitted). For a use to be considered "public" within the meaning of section 102(b), the public use must be made with all claim limitations. *Id.* A court evaluates the totality of the circumstances to determine if there was "a public use within the meaning of section 102(b)." *Netscape Comms. Corp.*, 295 F.3d at 1320. Some of these circumstances include "the nature of the activity that occurred in public; the public access to and knowledge of the public use; whether there was any confidentiality obligation imposed on persons who observed the use; whether persons other than the inventor performed the testing; the number of tests; the length of the test

Case 4:13-cv-00116-ODS   Document 177   Filed 11/04/15   Page 5 of 27

period in relation to tests of similar devices; and whether the inventor received payment for the testing." *Id.*

Defendant argues Plaintiff publicly disclosed the '023 patent because Plaintiff requested a bid from a mold maker which included drawings of the '023 patent. Defendant also argues that nothing on the bid request documents indicated any confidentially obligations.  Doc. #115.  This is the extent of Defendant's argument.  This single argument is not a sufficient analysis of "the totality of the circumstances", and thus, Defendant has failed to provide "clear and convincing" evidence that the patent is invalid.  Summary judgment is denied on this issue.

### B. Non-Infringement of the '181 and '023 Patents[2]

Defendant asserts that its Accused Products do not infringe Plaintiff's '181 and '023 patents.  "The determination of infringement requires a two-step analysis: (1) proper construction of the claim to determine its scope and meaning, and (2) a comparison of the properly construed claim to the accused device or process."  *Conroy v. Reebok Int'l, Ltd.*, 14 F.3d 1570, 1572 (Fed. Cir. 1994).

The first step involves claim construction, which is the court's determination of the scope and meaning of the patent claims asserted.  *See Cybor Corp. v. FAS Techs., Inc.*, 138 F.3d 1448, 1454 (Fed Cir. 1998).  Generally, a claim's words are given their ordinary and customary meaning – that is, "the meaning a term would have to a person of ordinary skill in the art after reviewing the intrinsic record at the time of the invention." *O2 Micro Intern. Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  In some instances, the ordinary meaning of claim language is "readily apparent" and claim construction merely requires applying "the widely accepted meaning of commonly understood words."  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1314 (Fed. Cir. 2005) (en banc).  In those situations, a dictionary can be helpful for claim construction. *Id.*  However, in other cases, determining the ordinary and customary meaning of claim language requires the court to look at three sources: (1) the claims; (2) the specification;

---

[2] The Court has provided an Appendix at the end of this Order summarizing its rulings regarding non-infringement of the '181 and '023 Patents.

and (3) the prosecution history. *Id.*; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370 (1996).

The claims themselves provide "substantial guidance" to the meaning of claim terms. *Phillips*, 415 F.3d at 1314. The context of the surrounding words of a claim should be considered. *ACTV, Inc. v. Walt Disney Co.*, 346 F.3d 1082, 1088 (Fed. Cir. 2003). The claims themselves are part of a "fully integrated written instrument" that consists of a specification and concludes with the claims. *Phillips*, 415 F.3d at 1315 (quoting *Markman*, 52 F.3d at 978). "Thus, the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).

Where the intrinsic record is ambiguous, and when necessary, [a district court may] rely on extrinsic evidence, which "consists of all evidence external to the patent and prosecution history, including expert and inventory testimony, dictionaries, and learned treatises." *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1360 (Fed. Cir. 2013) (quoting *Phillips*, 415 F.3d at 1312). However, extrinsic evidence is less reliable than the patent and its prosecution history in determining the meaning of claim terms. *Phillips*, 415 F.3d at 1318. Nevertheless, extrinsic evidence may be considered, but only to assist the court in understanding the patent; it cannot be used to vary or contradict the claim terms. *Markman*, 52 F.3d at 981.

With respect to the second step, "the patentee must prove that the accused device embodies every limitation in the claim, either literally" or under the Doctrine of Equivalents. *Id.* at 1573. "Literal infringement of a claim requires that every limitation recited in the claim appear in the accused device, i.e., that the properly construed claim reads on the accused device exactly." *Overhead Door Corp. v. Chamberlain Grp., Inc.*, 194 F.3d 1261, 1269 (Fed. Cir. 1999). "The doctrine of equivalents requires that the accused product contain each limitation of the claim or its equivalent." *Id.* Equivalence can be determined in one of two ways. First, the insubstantial difference test provides, "an element in the accused device is equivalent to a claim limitation if the only differences between the two are insubstantial." *Voda v. Cordis Corp.*, 536 F.3d 1311,

1326 (Fed. Cir. 2008) (internal quotations and citations omitted).  Second, the "function-way-result" test provides that "an element in the accused device is equivalent to a claim limitation if it performs substantially the same function in substantially the same way to obtain substantially the same result."  *Id.*  The function-way-result test is often used for mechanical devices.  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 40 (1997).  "Regardless how the equivalence test is articulated, the doctrine of equivalents must be applied to individual limitations of the claim, not to the invention as a whole."  *Mirror Worlds, LLC v. Apple Inc.*, 692 F.3d 1351, 1357 (Fed. Cir. 2012).

1.  '181 Patent

a.  Second Amended Complaint

Defendant asserts Plaintiff's Second Amended Complaint only accuses the ProGard of infringing the '181 Patent; and thus, Plaintiff cannot now assert that the Original ProMax and the Modified ProMax also infringe the '181 Patent.  The Court finds Defendant's argument unpersuasive.  Plaintiff listed the Original ProMax and Modified ProMax in its asserted claim chart.  Doc. #154-22.  Plaintiff included both products in its Preliminary Injunction briefing.  Doc. #24.  Finally, both Defendant's and Plaintiff's experts addressed the Original ProMax and Modified ProMax in their reports.  Doc. #107-7, Doc. #109-2.  Defendant has been fully aware that Plaintiff was asserting these claims.  Thus, the pleadings account for both the Original ProMax and the Modified ProMax.

b.  ProGard Claims 1 and 2

Defendant asserts that the ProGard does not infringe claims 1 and 2 of the '181 Patent.  Claims 1 and 2 require an exhaust vent guard with an upper hood portion which has walls that are "of a solid nature in order to provide a suitable barrier to moisture and debris."  '181 Patent, Col. 7, II. 40-42.  In its April 16, 2014, Claim Construction Order, the Court construed the term "solid nature" to mean essentially solid.  Doc. #92, page 5.  The Court noted that upper hood's walls did not need to provide "an absolute bar to moisture and debris."  *Id.*

8

Defendant argues that the ProGard does not have an upper hood portion with essentially solid walls, because the ProGard upper hood has "a grid-like structure on both sidewalls that wrap over the top wall." Doc. #117, page 10. Defendant contends that this grid-like structure prevents the upper hood from providing a suitable barrier to moisture and debris. However, the Court's examination of the ProGard indicates a reasonable juror could find that the ProGard infringes claims 1 and 2 of the '181 Patent. Accordingly, the Court denies summary judgment as to these claims.

### c. ProGard Claims 10 and 11

Defendant maintains the ProGard does not infringe claims 10 and 11 of the '181 Patent. These claims require an exhaust vent guard to have an upper hood portion which is "constructed and arranged to provide a weather barrier." '181 Patent, Col. 8, II. 28-30. In its April 16, 2014, Claim Construction Order, the Court construed the term "weather barrier" to mean "an object that provides protection against the natural elements, e.g., rain and snow." Doc. #92, page 6. The Court noted that the upper hood was not required to be "an absolute or complete barrier, or…an object in which the elements cannot pass through." *Id.*

Defendant argues that given the Court's construction, claims 10 and 11 require the upper hood portion to act like an umbrella, and that the ProGard's upper hood portion does not act like an umbrella. Defendant is essentially asking the Court to provide a new construction for the term "weather barrier," which the Court declines to do.

Here, the Court's examination of the ProGard indicates a reasonable juror could find that the ProGard infringes claims 10 and 11 of the '181 Patent. Accordingly, the Court denies summary judgment as to these claims.

### d. Original ProMax and Modified ProMax Claims 1 and 2 Preamble

Defendant argues the preamble to claim 1 of Patent '181 is limiting; however, Defendant provides no analysis or legal authority for this argument. Defendant's only support for this position is the testimony of Honeyman, but the Court excluded Honeyman's testimony regarding technical matters.

9

Regardless, a preamble is considered limiting when "it recites essential structure or steps." *Catalina Marketing Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed. Cir. 2002). A preamble is not considered limiting when the claim body "defines a structurally complete invention" and "the preamble only [] state[s] a purpose or intended use for the invention." *Id.* (citations and quotations omitted).

Here, claim 1's preamble states "an exhaust vent guard constructed and arranged to be mounted in a vertical orientation." '181 Patent, Col. 7, II. 33-35. This clause in the preamble does not describe the intended use or purpose of the invention. This is particularly clear when compared to the second clause of the preamble, which does describe an intended use or purpose of the invention by stating, "an exhaust vent guard…for protecting the exit area of an air vent conduit…" '181 Patent, Col. 7, II. 33-35. Additionally, the "vertical orientation" requirement recites "essential structure" of the invention. Thus, the Court finds that the phrase "an exhaust vent guard constructed and arranged to be mounted in a vertical orientation" does create a limitation in the '181 Patent. However, the Court's examination of the Original ProMax and the Modified ProMax indicates a reasonable juror could find that these devices infringe claims 1 and 2 of the '181 Patent. Thus, the Court denies summary judgment as to these claims.

e. Original ProMax and Modified ProMax Claims 1 and 2 Upper Hood Portion

Defendant asserts the Original ProMax and Modified ProMax do not infringe claims 1 and 2 of the '181 Patent. Claims 1 and 2 require "an exhaust vent guard" comprised of:

> an upper hood portion including a top wall, a pair of oppositely-disposed sidewalls, and a front wall, said top wall and the pair of side walls converging in the direction of said front wall, each of said hood portion walls being of a solid nature in order to provide a suitable barrier to moisture and debris; and

> a lower cage portion including a bottom wall, a pair of oppositely-disposed sidewalls, and a front wall, each of said four cage portion walls being constructed and arranged with a plurality of openings for permitting the free flow of air through each of said four cage portion walls, the size of each opening of said plurality of openings being small enough to prevent the nesting of brids inside of said exhaust vent guard.

10

'181 Patent, Col. 7, ll. 33-50.  The Court did not construe this claim in its April 16, 2014, Claim Construction Order.  Defendant maintains the claim language requires the upper hood portion and lower cage portion to be integral.  Plaintiff argues these claims permit the upper hood portion and the lower cage portion of an exhaust vent guard to be separate pieces.  In support of this position, Plaintiff relies primarily on Honeyman's excluded testimony and argues that a construction which prohibits the upper hood portion and the lower cage portion from being separate pieces improperly reads limitations into the claims.  The Court finds Plaintiff's position unpersuasive.

When construing claims, a patent's specification is "highly relevant."  *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996).  Here, the specification repeatedly refers to the upper hood portion and the lower cage portion of the exhaust vent guard as being integral.  *See e.g.*, '181 Patent, Abstract; Col. 2, ll. 15-16.  This repeated use of "integral" militates toward the conclusion that the upper hood portion and the lower cage portion cannot be separate pieces.  Further, the actual claim language leads to the same result.  Claim 1 requires an exhaust vent guard comprised of "an upper hood portion" and a "lower cage portion."  The ordinary and plain meaning of this language indicates that the exhaust vent guard is a single piece, a portion of which is an upper hood and a portion of which is a lower cage.  While the word "integral" is not used in the claim, a common sense reading of the claim language leads to only one conclusion:  that the exhaust vent guard's upper hood portion and lower cage portion must be integral; they cannot be separate pieces.

Defendant argues that the vent guard of the Original ProMax and Modified ProMax does not have both an upper hood portion and a lower cage portion.  The Court agrees.  The Court's review of the Original ProMax and Modified ProMax reveals that their guards do not have an upper hood portion.  Doc. #117, SOF 9, 11.

With respect to infringement under the doctrine of equivalents, the Federal Circuit has determined that a party need only file "summary judgment motion stating that the patentee has no evidence of infringement and pointing to the specific ways in which accused systems [do] not meet the claim limitations."  *Exigent Tech., Inc. v. Atrana Solutions, Inc.*, 442 F.3d 1301, 1308-09 (Fed. Cir. 2006).  Further, the Federal Circuit has held "the evidence of equivalence must be from the perspective of someone skilled

in the art, for example 'through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art.'" *AquaTex Indus., Inc. v. Techniche Solutions*, 479 F.3d 1320, 1329 (Fed. Cir. 2007) (internal citation omitted). Additionally, the Federal Circuit found that while expert testimony is not required to establish infringement under the doctrine of equivalents, "the difficulties and complexities of the doctrine require that evidence be presented to the jury or other fact-finder through the particularized testimony of a person of ordinary skill in the art, typically a qualified expert, who (on a limitation-by-limitation basis) describes the claim limitations and establishes that those skilled in the art would recognize the equivalents." *Id.*

Here, Defendant has pointed to specific ways in which the Original ProMax and Modified ProMax do not infringe the '181 patent and has asserted that Plaintiff has no evidence to prove otherwise. In response, Plaintiff marshalled Honeyman's testimony to support its position that the Original and Modified ProMax's do infringe the '181 patent. But the Court has excluded Honeyman's testimony regarding technical matters such as infringement. Thus, Plaintiff has presented no evidence in its response to Defendant's summary judgment motion that the Original ProMax and Modified ProMax infringe claims 1 and 2 of the '181 Patent. Accordingly, the Court grants summary judgment in favor of Defendant as to these claims.

f. Original ProMax and Modified ProMax Claims 1 and 2 Side Walls Converge

Defendant maintains the Original ProMax and Modified ProMax do not infringe on claims 1 and 2 of the '181 Patent. Claims 1 and 2 require the upper hood portion of the invention to have a "top wall and the pair of side walls converging in the direction of said front wall." '181 Patent, Col. 7, II. 36-39. In its Claim Construction Order, the Court construed the term "converging" to mean "coming together." Doc. #92, page 4.

Defendant argues that the side walls of the Original and Modified ProMax's do not come together. The Court agrees. The Court's inspection of the Original ProMax and Modified ProMax reveals that their side walls are parallel and do not come together. Doc. #117, SOF 9, 11.

With respect to the doctrine of equivalents, Defendant has pointed out specific ways in which the Original ProMax and the Modified ProMax do not infringe the '181 Patent, and the only evidence Plaintiff has presented in opposition is Honeyman's excluded testimony. Accordingly, the Court grants summary judgment in favor of Defendant as to these claims.

### g. Original ProMax and Modified ProMax Claims 10 and 11 Upper Hood Portion

Defendant claims that the Original and Modified ProMax's do not infringe claims 10 and 11 of the '181 Patent. Claims 10 and 11 require:

> a snap-on exhaust vent guard which is received by said vent frame, said exhaust vent guard including an upper hood portion constructed and arranged to provide a weather barrier and a lower cage portion constructed and arranged to permit the free flow of air through said lower cage portion and to prevent the nesting of birds inside of said exhaust vent guard.

'181 Patent, Col. 8, ll. 27-33. The Court did not construe this claim in its April 16, 2014, Claim Construction Order. Defendant argues that the claim requires the exhaust vent guard's upper hood portion and lower cage portion to be integral. Plaintiff argues that the claim language allows the upper hood portion and lower cage portion to be separate. In support of its argument, Plaintiff relies on Honeyman's excluded testimony and notes that the term "integral" is not used in the claim language. Plaintiff also contends that while other embodiments of the invention are described as being "unitary," claim 10 embodiments are never described as such; nor does claim 10 use the word "unitary." The Court finds Plaintiff's position is unpersuasive.

As previously discussed, a patent's specification is "highly relevant" in construing claims. *Vitronics Corp.*, 90 F.3d at 1582. Here, the patent specification refers to the upper hood portion and the lower cage portion as being integral. *See*, '181 Patent, Abstract. Further, the specification states that embodiments of claim 1 and embodiments of claim 10 are "virtually identical" in "the general design concept of guard involving the solid hood, cage, and the tapered sides…" '181 Patent, Col. 6, ll. 46-50. The main difference between the two types of embodiments is their intended use, in that, claim 1 embodiments "may be used over any existing vent hood," whereas claim 10 embodiments are "designed for a snap-fit onto frame." '181 Patent, Col. 6, ll. 50-58.

13

The specification describes embodiments of claim 1 as having an integral upper hood portion and lower cage portion; and thus, the specification indicates that embodiments of claim 10 would have an "identical" requirement. '181 Patent, Col. 2, ll. 15-16. This leads to the conclusion that the upper hood portion and the lower cage portion cannot be separate pieces.

Additionally, the language of claim 10 leads to the same result. Claim 10 requires an "exhaust vent guard including an upper hood portion constructed and arranged to provide a weather barrier and a lower cage portion constructed and arranged to permit the free flow of air through said lower cage portion and to prevent the nesting of birds inside of said exhaust vent guard." '181 Patent, Col. 8, ll. 27-33. While the term "unitary" is not used in the claim, the Court finds that a common sense reading of the claim language leads to only one conclusion: that the exhaust vent guard's upper hood portion and lower cage portion must be integral; they cannot be separate pieces.

Defendant argues that the Original ProMax and Modified ProMax vent guard does not have both an upper hood portion and lower cage portion. The Court's review of these devices indicates Defendant is correct. Doc. #117, SOF 9, 11.

With respect to the doctrine of equivalents, Defendant has pointed out specific ways in which the Original ProMax and the Modified ProMax do not infringe the '181 Patent, and the only evidence Plaintiff has presented in opposition is Honeyman's excluded testimony. Accordingly, the Court grants summary judgment in favor of Defendant as to these claims.

### h. Original ProMax Claims 10, 11, 14, 15, and 16 Plurality of Louvers

Claims 10, 11, 14, 15, and 16 of the '181 Patent require "a plurality of flow-control louvers pivotally mounted into said vent frame, said louvers being constructed and arranged to permit exiting flow out of said air exit aperture and to substantially block any reverse air flow from outside of said exhaust vent from entering said air exit aperture." '181 Patent, Col. 8, ll. 21-26. Defendant maintains the Original ProMax does not infringe claims 10, 11, 14, 15, and 16, because the single louver damper of the Original ProMax was created "to prevent back draft wind from catching the bottom edge of the damper and lifting it up." Doc. #117, page 18. Defendant continues that the plurality of

14

louvers described in claims 10, 11, 14, 15, and 16 were not created for this function, but instead "allow flow only in the exiting direction." *Id.* In essence, Defendant argues that the plurality of louvers in the '181 Patent do not perform substantially the same function as the ProMax's single louver.

Defendant has incorrectly reversed the analysis. To determine infringement pursuant to the doctrine of equivalents, Defendant must demonstrate whether the ProMax performs substantially the same function as the '181 Patent – not the other way around. Accordingly, summary judgment is denied as to these claims.

i.    Modified ProMax Snap On Feature

Defendant maintains that the Modified ProMax does not infringe, either literally or under the doctrine of equivalents, claims 10 and 11 of the '181 Patent, because the Modified ProMax's vent guard does not "snap-on" to its hood. In response, Plaintiff does not dispute Defendant's assertion that Plaintiff has asserted claims for infringement both literally and under the doctrine of equivalents. Doc. #150. But it appears to the Court that Plaintiff has only asserted infringement based on the doctrine of equivalents. Doc. #154-22. As such, the Court will only address whether the Modified ProMax infringes claims 10 and 11's "snap-on" requirement under the doctrine of equivalents.

Unlike most of Plaintiff's other doctrine of equivalents arguments, Plaintiff has presented other evidence aside from Honeyman's excluded opinion. Thus, the Court finds that there are disputed issues of material fact and denies summary judgment.

j.    Remaining Claims

Finally, Defendant seeks summary judgment that its ProGard and Original ProMax do not infringe claims 3-9, 12-13, and 17 of the '181 Patent, and that its Modified ProMax does not infringe claims 3-9 and 12-17 of the '181 Patent. However, Plaintiff points out it is not asserting that the ProGard, the Original ProMax, and the Modified ProMax are infringing those claims of the '181 Patent. See. Doc. #154-22. Thus, Defendant is not entitled to summary judgment regarding claims Plaintiff has not asserted.

15

2. '023 Patent

a. ProGard Claim 1

Defendant argues the ProGard does not infringe claim 1 of the '023 Patent. Claim 1 describes an exhaust vent guard that has a "unitary vent hood" and a "unitary vent guard." '023 Patent, Col. 9, II. 66; Col. 10, II. 8. The Court did not construe the term "unitary" in its April 16, 2014, Claim Construction Order. Defendant proposes that the term be construed as "one unit" or "one piece." Plaintiff states that "a unitary vent hood" and "unitary guard" in a "snap fit assembly" should be construed as "separate components that are unitary in and of themselves which together make up an exhaust vent hood." Doc. #149, page 19. Plaintiff's main support for this position is Marshall Honeyman's opinion. However, the Court excluded Honeyman from opining on technical issues such as infringement; and thus, his opinion provides no support for Plaintiff's position.

Regardless, Plaintiff's position is not persuasive. The Court finds that the term "unitary" does not need construction and is given its plain and ordinary meaning. Unitary means "one piece" or "one unit." This definition is bolstered by the fact that the term "unitary" is used twice in claim 1 – once to modify the hood and once to modify the guard. If "unitary" were meant to define the entire assembly system, as opposed to defining each individual component, the term likely would have been used only once.

Defendant maintains that the ProGard's vent guard and vent hood are not two separate units. Rather, Defendant asserts that the ProGard's vent guard and vent hood are all one piece; and thus, the ProGard does not infringe claim 1 of the '023 Patent. The Court agrees. Claim 1 requires a "unitary vent hood" and a "unitary vent guard." The Court's inspection of the ProGard reveals that its hood and guard are not separate units. Doc. #117, SOF 5.

16

Additionally, with respect to the doctrine of equivalents, Defendant has pointed out specific ways in which the ProGard is not infringing, and the only evidence Plaintiff has presented in opposition to this assertion is Honeyman's excluded testimony. Accordingly, the Court grants summary judgment in favor of Defendant.

### b.  ProGard Claims 2 and 10

Defendant contends the ProGard does not infringe on claims 2 and 10 of the '023 Patent.  Claims 2 and 10 describe a vent hood that has "at least one receiving aperture" for the projections on the vent guard to snap into.  '023 Patent, Col. 10, ll. 12-14, 44-46. The Court did not construe the term "aperture" in its April 16, 2014, Claim Construction Order, but the Court finds "aperture" needs no construction and shall be given its plain and ordinary meaning.  An aperture is a hole or circular opening.

Defendant states the ProGard's "hood" does not have apertures to receive projections that are on the ProGard guard.  The Court agrees.  In fact, the ProGard does not have apertures at all.  Rather, what Plaintiff considers apertures are actually more akin to slots.  Doc. #117, SOF 5. The ProGard's slots are not completely enclosed holes, as would be required to be an aperture.

Regarding the doctrine of equivalents, Defendant has pointed out specific ways in which the ProGard does not infringe, and the only evidence Plaintiff has cited in response is Honeyman's excluded testimony.  As such, the Court grants summary judgment in favor of Defendant for both literal infringement and pursuant to the doctrine of equivalents.

### c.  ProGard Claims 13, 14, 17, 18 – Preamble

With no analysis or citation to legal authority, Defendant contends that the preamble to claims 13 and 17 is limiting.  In support of its argument, Defendant relies on deposition testimony from Plaintiff's proffered expert, Honeyman.  However, the Court has excluded Honeyman as a technical expert, and thus, his opinion provides no support for Defendant's position.

Nonetheless, a preamble is considered limiting when "it recites essential structure or steps." *Catalina Marketing Int'l, Inc.*, 289 F.3d at 808. A preamble is not considered limiting when the claim body "defines a structurally complete invention" and "the preamble only [] state[s] a purpose or intended use for the invention." *Id.* (citations and quotations omitted).

Here, the preamble of claims 13 and 17 states "a guard for covering over the exit opening of a hooded exhaust vent…" '023 Patent, Col. 10, II. 55-57; Col. 11, II. 7-9. This phrase, quite clearly, states only an intended use or purpose for "the guard." Additionally, the body of claims 13 and 17 describes a structurally complete invention. Finally, the preamble does not recite essential structure of the guard. Thus, the Court finds that the preamble is not limiting and summary judgment is denied.

### d. ProGard Claims 13, 14, 17, and 18

Defendant asserts the ProGard does not infringe claims 13, 14, 17, and 18 of the '023 Patent. Defendant observes that claims 13 and 17 require a "plurality of attachment projections being constructed and arranged for attachment to said hood and for being positioned over said exit opening." '023 Patent, Col. 10, II. 65-67; Col. 12, II. 5-7. Plaintiff argues that the intended meaning of claims 13 and 17 is to require the vent guard to be positioned over the exit opening, not the attachment projections. Plaintiff points to Honeyman's testimony in support of this position, but Honeyman's testimony has been excluded. Regardless, the term "guard" is not used in the body of claims 13 and 17, and the Court will not insert this missing term. Rather, claims 13 and 17 plainly require the projections to be positioned over the exit opening.

Thus, the Court finds that the ProGard does not infringe claims 13, 14, 17, and 18 for two reasons. First, the projections are not positioned over the exit opening. Instead, they are positioned on the wall that forms part of the exit opening. Doc. #117, SOF 5. Second, the plurality of projections extend from the ProGard's "hood." These projections do not extend from the outer edge of the ProGard's "guard," as required by claims 13, 14, 17, and 18.

With respect to the doctrine of equivalents, Defendant has pointed out specific ways in which the ProGard does not infringe, and the only evidence Plaintiff has

18

presented in opposition is Honeyman's excluded testimony. Accordingly, the Court grants summary judgment in favor of Defendant as to these claims.

### e. Original ProMax Claims 1, 2, and 10

Defendant asserts the Original ProMax does not infringe claims 1, 2, and 10 of the '023 Patent. Defendant notes that claims 1, 2, and 10 require a vent hood that has "a rear wall defining therein an exhaust aperture" and contends that this rear wall is a structure that surrounds the aperture. '023 Patent, Col. 9, II. 66-67. Defendant also notes that claims 1, 2, and 10 require "a connecting portion positioned around said exhaust aperture…" '023 Patent, Col. 9, II. 67; Col. 10, ll. 1. Defendant argues that the Original ProMax only has a rear wall defining the exhaust aperture; it does not have a connecting portion around that exhaust aperture. However, the Court's examination of the Original ProMax indicates a reasonable juror could find the Original ProMax infringes claims 1, 2, and 10 of the '023 Patent, both literally and under the doctrine of equivalents. Accordingly, the Court denies summary judgment as to these claims.

### f. Original ProMax Claims 13, 14, and 15

Defendant argues the Original ProMax does not infringe claims 13, 14, and 15 of the '023 Patent. Claims 13, 14, and 15 call for a vent guard that has "a substantially planar grid portion." '023 Patent, Col. 10, II. 58-60. Defendant alleges that because the Original ProMax's vent guard has depth, it cannot be considered "substantially planar." Despite this assertion, the Court finds a reasonable juror could determine the Original ProMax infringes claims 13, 14, and 15 of the '023 Patent. Therefore, the Court declines to grant summary judgment in Defendant's favor.

### g. Original ProMax Claims 13, 14, 17 and 18

Defendant contends the Original ProMax does not infringe claims 13, 14, 17 and 18 of the '023 Patent. Defendant observes that claims 13 and 17 requires a "plurality of attachment projections being constructed and arranged for attachment to said hood and for being positioned over said exit opening." '023 Patent, Col. 10, II. 65-67; Col. 12, II.

19

5-7. Plaintiff argues that the intended meaning of claims 13 and 17 is to require the vent guard to be positioned over the exit opening, not the attachment projections. Plaintiff points to Honeyman's testimony in support of this position, but the Court has excluded Honeyman's testimony. Regardless, the term "guard" is not used in the body of claims 13 and 17, and the Court will not insert a missing term to reach Plaintiff's desired claim construction. Rather, claims 13 and 17 plainly require the projections to be positioned over the exit opening.

Therefore, the Court finds that the Original ProMax does not infringe claims 13, 14, 17 and 18, because the projections are not positioned over the exit opening. Instead, they are positioned through the wall that forms part of the exit opening. Doc. #117, SOF 9.

Regarding the doctrine of equivalents, Defendant has pointed out specific ways in which the ProGard does not infringe, and the only evidence Plaintiff has cited in response is Honeyman's excluded testimony. Accordingly, the Court grants summary judgment in favor of Defendant as to these claims.

### h. Original ProMax Claims 13, 14, 17 and 18

Defendant maintains the Original ProMax does not infringe claims 13, 14, 17 and 18 of the '023 Patent because of where the "plurality of projections" are placed on the ProMax's guard. Claims 13 and 17 provide for a vent or basket guard comprised of a grid portion that has "a surrounding outer edge which is integral with said grid portion; and a plurality of attachment projections extending from said outer edge and being integral therewith…" '023 Patent, Col. 10, II. 63-65; Col. 12, II. 3-5. Defendant observes that the Original ProMax's surrounding outer edge has two "arms" extending from that outer edge. Defendant argues that the Original ProMax's attachment projections extend from these arms, rather than from the Original ProMax's surrounding outer edge. However, the Court finds a reasonable juror could determine that the Original ProMax infringes on these limitations found in claims 13, 14, 17 and 18 of the '023 Patent, both literally and pursuant to the doctrine of equivalents. Thus, summary judgment is denied.

i.   Claims 3-9, 11-12, and 15-16 of the '023 Patent

Finally, Defendant seeks summary judgment that its ProGard and Original ProMax do not infringe claims 3-9, 11-12, and 15-16 of the '023 patent.  However, Plaintiff notes it is not asserting that the ProGard and the Original ProMax are infringing those claims of the '023 patent.  *See* Doc. #154-22.  Thus, Defendant is not entitled to summary judgment regarding claims Plaintiff has not asserted.

### C.  Lanham Act

Defendant contends it is entitled to summary judgment as to Plaintiff's Lanham Act. Doc. #112.  The Lanham Act provides that:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which –

(A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or

(B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities,

shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. §§ 1125(a)(1)(A) and (B).  Section 1125(a)(1)(A) is known as the false endorsement prohibition and section 1125(a)(1)(B) is known as the false advertising prohibition.  *American Ass'n. of Orthodontists v. Yellow Book USA, Inc.*, 434 F.3d 1100, 1102 (8th Cir. 2006).

In *Lexmark International v. Static Control Components, Inc.*, the Supreme Court announced a zone of interests and proximate cause analysis would be used to determine if a plaintiff could assert a Lanham Act false advertising claim.  134 S.Ct. 1377 (2014).  The *Lexmark* Court determined that, "to come within the zone of interests

21

in a suit for false advertising under § 1125(a), a plaintiff must allege an injury to a commercial interest in reputation or sales." *Id.* at 1390. To establish proximate causation under § 1125(a), a plaintiff "ordinarily must show economic or reputational injury flowing directly from the deception wrought by the defendant's advertising; and that occurs when deception of consumers causes them to withhold trade from the plaintiff." *Id.* at 1391.

To establish a claim for false advertising under the Lanham Act, Plaintiff must demonstrate, "(1) a false statement of fact by the defendant in a commercial advertisement about its own or another's product; (2) the statement actually deceived or has the tendency to deceive a substantial segment of its audience; (3) the deception is material, in that it is likely to influence the purchasing decision; (4) the defendant caused its false statements to enter interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the false statement…" *United Indus. Corp. v. Clorox Co.*, 140 F.3d 1175, 1180 (8th Cir. 1998). If the plaintiff demonstrates that the defendant's statement was "literally false, a court may grant relief without considering whether the buying public was actually misled; actual consumer confusion need not be proved." *Id.*

To establish a claim for false endorsement under the Lanham Act, Plaintiff must establish that the defendant engaged in "false representations concerning the origin, association, or endorsement of goods or services through the wrongful use of another's distinctive mark, name, trade dress, or other device." *Am. Ass'n. of Orthodontists*, 434 F.3d at 1103.

Because there are disputed issues of material fact, summary judgment is denied as to the Lanham Act claims against Defendant.

### D. Common Law Unfair Competition

Defendant asserts that to the extent Plaintiff's common law unfair competition claim relies on its allegations of infringement, federal patent law preempts this claim. Defendant points to *Dow Chemical Co. v. Exxon Corp.*, which states "a state law tort claim is not preempted by the federal patent law, even if it requires the state court to adjudicate a question of federal patent law, provided the state law cause of action

includes additional elements not found in the federal patent law cause of action and is not an impermissible attempt to offer patent-like protection to subject matter addressed by federal law." 139 F.3d 1470, 1473 (Fed. Cir. 1998). Plaintiff's unfair competition claim would be based on state substantive law. Neither Plaintiff nor Defendant provides the Court with an analysis of what state's substantive law would be applicable to this claim. Therefore, the Court cannot determine whether Plaintiff's common law unfair competition claim is, in fact, preempted by patent law. At this juncture in the proceedings, Defendant has the burden to establish that it is entitled to judgment as a matter of law. Defendant has not met its burden on this issue, and therefore, summary judgment is denied as to this claim.

However, Defendant notes Plaintiff should not be able to seek double recovery based on the same actions by Defendant under an unfair competition claim and under infringement claims. The Court agrees. Thus, while Plaintiff's unfair competition claim is not disposed of at this juncture, Plaintiff will not be permitted to obtain double recovery based on the same actions by Defendant.

Finally, Defendant asserts that to the extent Plaintiff's common law unfair competition claim relies on allegations regarding Defendant's packaging, summary judgment should be granted in favor of Defendant. Again, Plaintiff's unfair competition claim would be based on state substantive law, and because neither Plaintiff nor Defendant provides the Court with an analysis of what state's substantive law would be applicable to this claim, the Court cannot assess the merits of Defendant's argument. Accordingly, summary judgment is denied.

*E. Limiting Damages*

1. Marking

Defendant asserts Plaintiff's pre-suit damages should be limited due to the patent marking statute.

The Patent Act limits the amount of damages Plaintiff can recover "to those acts of infringement that occurred after the patentee gave the alleged infringer 'notice of infringement.'" *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001) (citing 35 U.S.C. § 287). Notice occurs either by "constructive notice, which is accomplished by

23

marking the article with the patent number, or [by] actual notice." *Id.* Actual notice requires "'affirmative communication to the alleged infringer of a specific charge of infringement by a specific accused product or device.'" *Id.* (citing *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed Cir. 1994)); *see also* 35 U.S.C. § 287. "[M]ere 'notice of the patent's existence or ownership' is not 'notice of infringement'…" *Id.* (citing *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178, 187 (Fed Cir. 1994)). In analyzing actual notice, the Court "must focus on the action of the patentee, not the knowledge of the infringer." *Lans v. Digital Equipment Corp.*, 252 F.3d 1320, 1327 (Fed. Cir. 2001) (internal quotations and citations omitted). Plaintiff's communication must provide "sufficient specificity regarding its belief that the recipient may be an infringer…" *Gart v. Logitech, Inc.*, 254 F.3d at 1346. In the context of certain parties' relationships, "knowledge of a specific infringing device is not a legal prerequisite" to determine whether a communication sufficiently provided actual notice. *Minks v. Polaris Industries, Inc.*, 546 F.3d 1364, 1377 (Fed. Cir. 2008). Filing an infringement lawsuit also constitutes actual notice. 35 U.S.C. § 287.

Here, Plaintiff does not dispute it did not provide constructive notice to Defendant by marking its patented products. Doc. #151, page 31. Thus, Plaintiff's damages are limited based on the date it provided actual notice to Defendant of the alleged infringement.

Plaintiff contends Defendant was aware of Plaintiff's patents as early as 2002 and attempted to design around Plaintiff's patents at that time. Similarly, Plaintiff maintains it has evidence that Defendant was aware of Plaintiff's patents as early as the 1990s. While these factual assertions may or may not be true, Defendant's knowledge alone does not constitute actual notice. In determining whether Defendant received actual notice, the inquiry focuses on Plaintiff's actions, and whether *Plaintiff* affirmatively communicated to Defendant "a specific charge of infringement by a specific accused product or device." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1345 (Fed. Cir. 2001); *see also Lans v. Digital Equipment Corp.*, 252 F.3d 1320 (Fed. Cir. 2001); *Amsted Indus. Inc. v. Buckeye Steel Castings Co.*, 24 F.3d 178 (Fed. Cir. 1994). While the alleged infringer's knowledge of the patent may be relevant given the history of the parties' relationship, the patentee still must take steps to notify the alleged infringer. *Minks*, 546

F.3d at 1376-77.  Here, Plaintiff does not identify any communications it made to Defendant in the 1990s or 2000s.  Thus, Defendant's knowledge of Plaintiff's patents, without more, is insufficient to establish actual notice.

Plaintiff asserts it sent a Cease and Desist Letter to Defendant accusing Defendant of infringing Plaintiff's patents.  Doc. #134-3.  The Cease and Desist Letter provides "sufficient specificity regarding [Plaintiff's] belief that [Defendant] may be an infringer…," as it unequivocally accuses Defendant of infringing the '023 patent by manufacturing, selling, and distributing various exhaust vents and pest barricades.  *Gart v. Logitech, Inc.*, 254 F.3d at 1346.  Accordingly, Plaintiff provided actual notice to Defendant of its allegedly infringing activity regarding the '023 patent on August 1, 2012; and thus, Plaintiff is limited to damages starting on August 1, 2012.

However, there are disputed issues of material fact as to what products the Cease and Desist Letter identified as infringing.  Further, while Plaintiff has presented no evidence demonstrating it provided Defendant actual notice regarding the '181 patent prior to the August 1, 2012 Cease and Desist Letter, there are disputed issues of material fact as to whether the Cease and Desist Letter provided actual notice regarding Defendant's alleged infringement of the '181 patent.


2. Laches

Defendant argues Plaintiff's pre-suit damages should be barred due to the laches doctrine.

To establish a laches defense, Defendant must demonstrate: (1) Plaintiff's delay in bringing suit was unreasonable and inexcusable, and (2) Defendant suffered material prejudice attributable to Plaintiff's delay.  *A.C. Aukerman Co. v. R.L. Chaides Const. Co.*, 960 F.2d 1020, 1028 (Fed. Cir. 1992).  A presumption of laches arises if the patentee delays filing suit for more than six years from the time the plaintiff knew or reasonably should have known of the defendant's alleged infringing activities.  *Id.* at 1035.  However, if a patentee files suit within six years, no presumption arises.  *Id.* at 1038.

Without the presumption, the alleged infringer must prove unreasonable delay and prejudice.  In determining whether Plaintiff's delay was unreasonable and

inexcusable, the Court may consider whether Plaintiff was involved in other litigation, negotiations with the accused infringer, the extent of the alleged infringement, possible poverty and illness under limited circumstances, wartime conditions, and dispute over ownership of the patent. *Id.* at 1033. Additionally, "the equities may…require that the plaintiff communicate its reasons for delay to the defendant." *Id.*

Material prejudice to Defendant may be either evidentiary or economic. *Id.* Evidentiary prejudice occurs when Defendant is unable "to present a full and fair defense on the merits due to the loss of records, the death of a witness, or the unreliability of memories of long past events, thereby undermining the court's ability to judge the facts." *Id.* Economic prejudice occurs when Defendant and "possibly others will suffer the loss of monetary investments or incur damages which likely would have been prevented by earlier suit." *Id.* "Such damages or monetary losses are not merely those attributable to a finding of liability for infringement." *Id.* Rather, courts "must look for a change in the economic position of the alleged infringer during the period of delay." *Id.*

Because there are disputed issues of material fact, summary judgment is denied as to Defendant's laches defense.

## IV.    CONCLUSION

For the foregoing reasons, Defendant's Motions for Summary Judgment are granted in part and denied in part.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
UNITED STATES DISTRICT COURT

DATE: November 4, 2015

Appendix

| Patent | Claims | Accused Products | Summary Judgment Grant/Deny |
|---|---|---|---|
| '181 | Claims 1 & 2 | ProGard | Deny |
| '181 | Claims 10 & 11 | ProGard | Deny |
| '181 | Claims 1 & 2 Preamble | Original ProMax Modified ProMax | Deny |
| '181 | Claims 1 & 2 Upper Hood Portion | Original ProMax Modified ProMax | Grant |
| '181 | Claims 1 & 2 Side Walls Converge | Original ProMax Modified ProMax | Grant |
| '181 | Claims 10 & 11 Upper Hood Portion | Original ProMax Modified ProMax | Grant |
| '181 | Claims 10, 11, 14, 15, & 16 – Plurality of Louvers | Original ProMax | Deny |
| '181 | Claims 10 & 11 Snap On Feature | Modified ProMax | Deny |
| '181 | Claims 3-9, 12-13, & 17 | ProGard | Deny |
| '181 | Claims 3-9, 12-13, & 17 | Original ProMax | Deny |
| '181 | Claims 3-9, 12-17 | Modified ProMax | Deny |
| '023 | Claim 1 | ProGard | Grant |
| '023 | Claims 2 & 10 | ProGard | Grant |
| '023 | Claims 13, 14, 17, & 18 – Preamble | ProGard | Deny |
| '023 | Claims 13, 14, 17, & 18 | ProGard | Grant |
| '023 | Claims 1, 2, & 10 | Original ProMax | Deny |
| '023 | Claims 13, 14, & 15 | Original ProMax | Deny |
| '023 | Claims 13, 14, 17, & 18 – Projections over Exit Opening | Original ProMax | Grant |
| '023 | Claims 13, 14, 17, & 18 – Placement of Projections | Original ProMax | Deny |
| '023 | Claims 3-9, 11-12, & 15-16 | ProGard | Deny |
| '023 | Claims 3-9, 11-12, & 15-16 | Original ProMax | Deny |