IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| DEFLECTO, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 13-0116-CV-W-ODS |
| | ) |
| DUNDAS *JAFINE INC., | ) |
| | ) |
| Defendant. | ) |

ORDER (1) GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTIONS IN LIMINE, AND (2) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTIONS IN LIMINE

Pending are the parties' motions in limine. Parties are reminded that these rulings are interlocutory. Therefore, the denial of a request to bar evidence at this juncture preserves nothing for review, and the parties are encouraged to re-assert their objections at trial if they deem it appropriate to do so. Evidence that is barred shall not be discussed in the jury's presence (including during opening statements) without leave of the Court, and in this regard, Parties are free to suggest (out of the jury's presence) that something has occurred during the trial that justifies a change in the Court's interlocutory ruling.

Defendant's Motion in Limine No. 1 (Doc. #206)

Defendant seeks to exclude evidence that the Modified ProMax infringes the '181 Patent, the ProGard infringes the '023 Patent, and the Original ProMax infringes claims 14, 15, and 16 of the '181 Patent. Plaintiff agrees that it will only present evidence as to infringement of the '181 and '023 Patents for claims that are still at issue in this case.

However, Plaintiff asserts that Defendant should not be permitted to argue the Modified ProMax was "blessed" by the Court. It is not entirely clear what Plaintiff means by this statement. Plaintiff also argues it should be able to present evidence which is necessary to explain other evidence and argument concerning issues remaining for trial, including Plaintiff's claim for damages, Defendant's willful infringement, evidence that

certain facts have been established, and to rebut any claims made by Defendant. Again, it is not entirely clear to what Plaintiff is referring, nor is it clear that this request contravenes Defendant's Motion in Limine. Thus, at this time, the Court grants Defendant's Motion in Limine.

Defendant's Motion in Limine No. 2 (Doc. #206)

Defendant seeks to limit the time period for which Plaintiff is entitled to lost profits damages. Defendant notes that to be entitled to lost profits under the *Panduit* test, Plaintiff must establish that there are no acceptable non-infringing alternatives. *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). Plaintiff argues that because the Court has determined the Modified ProMax is non-infringing, the time period for which Plaintiff is entitled to lost profits should be limited. While the Court has determined that the Modified ProMax is non-infringing, whether the Modified ProMax constitutes an *acceptable* non-infringing alternative is not a determination that is properly decided in a Motion in Limine, but rather an issue to be determined at trial. Accordingly, Defendant's Motion in Limine is denied.

Defendant's Motion in Limine No. 3 (Doc. #206)

Defendant seeks to prevent Plaintiff from using terms such as "copycat," "knockoff," "copied," "ripped off," and "stole."

This matter is a patent infringement case, and Plaintiff must be allowed to use appropriate language in arguing its case. Accordingly, the Court will permit Plaintiff to use words such as "copy" and "duplicate," as these terms are not unduly prejudicial. However, the Court finds that all lawyers and witnesses will be precluded from using inflammatory, pejorative, or loaded words such as "copycat," "knockoff," "ripped off," and "stole." These types of words will not be permitted in opening statements, questions, witness answers, closing statements, or otherwise throughout trial. Counsel should advise their clients and witnesses of this prohibition.

Thus, Defendant's Motion in Limine No. 3 is granted in part and denied in part.

2

Defendant's Motion in Limine No. 4 (Doc. #206)

Defendant seeks to exclude evidence that it developed the Modified ProMax because Defendant realized the Original ProMax infringed. In support of this position, Defendant points to Federal Rule of Evidence 407 which states that, "when measures are taken that would have made an earlier injury or harm less likely to occur, evidence of the subsequent measures is not admissible to prove…culpable conduct [or] a defect in a product or its design…"

While Plaintiff argues Defendant should not be permitted to argue the Modified ProMax "cured" Defendant's alleged infringement of the Original ProMax, Plaintiff also states in its seventh Motion in Limine that, "the Modified ProMax, Defendant's redesign around Plaintiff's Patents after Defendant's infringement was discovered by Plaintiff, should not be shown to the jury, nor should any evidence or testimony related to the redesign or Modified ProMax product be admitted. The Modfied ProMax is irrelevant to the claims remaining at issue…" Doc. #187, page 2.

The Court finds that introducing the Modified ProMax to prove that Defendant knew the Original ProMax allegedly infringed Plaintiff's patents is precisely the type of evidence Federal Rule of Evidence 407 is designed to preclude. Accordingly, Defendant's Motion in Limine is granted.

Defendant's Motion in Limine No. 5 (#206)

Defendant seeks to exclude evidence of former bad acts it allegedly committed. This evidence falls into four general categories: (1) alleged dumpster diving, (2) allegedly stolen employee, (3) alleged re-packaging of Plaintiff's products, and (4) alleged copying of unpatented products. The Court will address each category in turn.

A. Alleged Dumpster Diving

Plaintiff claims that some time ago one of its third shift supervisors stated he found Murray Jafine rummaging through Plaintiff's dumpsters. Plaintiff cannot remember the third shift supervisor's name. Defendant argues that this evidence is hearsay. Plaintiff responds that the evidence is not being offered to prove the truth of

3

Case 4:13-cv-00116-ODS   Document 261   Filed 12/22/15   Page 3 of 20

the matter asserted, but rather to show absence of mistake. First, this evidence *is* being offered to prove the truth of the matter asserted. Second, offering the evidence to prove absence of mistake does not overcome the rule against inadmissible hearsay. Rather, offering evidence for this purpose would only overcome the strictures related to prior bad acts under Federal Rule of Evidence 404.

Plaintiff offers no exception to hearsay that would make this evidence admissible. Plaintiff points to Federal Rule of Evidence 803(22), but the Court finds that this exception is not applicable, as it permits the introduction of certain previous convictions. Here, there does not appear to be any previous conviction. Thus, the Court grants Defendant's Motion in Limine regarding the alleged dumpster diving.

B. Allegedly Stolen Employee, Alleged Re-Packaging of Plaintiff's Products During Payless Cashways Buyback, and Alleged Copying of Unpatented Products

The Court agrees with Plaintiff that the above listed categories are relevant evidence. But the Court also agrees with Defendant that these alleged prior bad acts' have limited probative value and are outweighed by the potential for jury confusion and by undue prejudice. The jury easily could conclude that because Defendant committed these prior bad acts, Defendant also committed the acts accused in this lawsuit. However, if Defendant attempts to cloak itself as an innocent party, the Court will permit Plaintiff latitude in introducing this evidence. Therefore, at this juncture, the Court grants Defendant's Motion in Limine with respect to these remaining categories of evidence.

Defendant's Motion in Limine No. 6 (Doc. #206)

Defendant seeks to exclude part of Paul Jafine's deposition testimony. Specifically, Defendant points to the following portion:

> Q. (By Ms. Kimball) Yes. I'll say it another way. You're saying a lot of competitors have products that look like Deflecto's; you said that. And so my question is, did you ever seek to find out who has the rights to that technology rather than just saying, well, everybody else is doing it, we'll do it too?

4

Case 4:13-cv-00116-ODS   Document 261   Filed 12/22/15   Page 4 of 20

> Mr. Knops: Objection as to vague and objection as to legal conclusion. You may proceed.
>
> A. Isn't imitation a form of flattery?

Doc. #206-4, pages 18-19. Defendant argues that the question was vague and that the answer is an improper legal conclusion, irrelevant, unduly prejudicial, and the result of accusatory and repetitive questions. The Court does not find these arguments persuasive.

First, any alleged vagueness can be cured by the context of the deposition. Second, Defendant states that Mr. Jafine's testimony could be interpreted as a legal conclusion regarding whether or not products in the marketplace are covered by Plaintiff's patents. The Court, however, finds that Mr. Jafine's testimony is not a legal conclusion, and the jury shall be permitted to determine what was meant by his statement. Third, the Court finds that the statement is relevant evidence, as this case involves alleged patent infringement and alleged violations of the Lanham Act, and thus, evidence regarding alleged imitation is relevant. Fourth, while the evidence may be prejudicial to Defendant, it is not unduly so. Fifth, while the Court acknowledges that there was a "ramp up" leading to Mr. Jafine's answer, the Court does not find that this is necessarily grounds for exclusion, nor does Defendant cite authority for this proposition.

Therefore, Defendant's Motion in Limine No. 6 is denied.

Defendant's Motion in Limine No. 7 (Doc. #206)

Defendant notes Plaintiff disclosed Stephen Meyer as a potential expert not requiring a written report. Doc. #207-4. Defendant seeks various evidentiary rulings regarding Mr. Meyer, including (1) defining Mr. Meyer's area of expertise, (2) limiting certain topics to which Mr. Meyer may testify to the time period in which Mr. Meyer "was in the industry," and (3) prohibiting Mr. Meyer from testifying about certain topics altogether.

First, Plaintiff contends that its expert designation notice "leaves no ambiguity about what Mr. Meyer is qualified to testify about as he is the inventor of the products embodied by both patents at issue in this case." Doc. #227. Plaintiff offers Mr. Meyer as a hybrid witness (i.e. a witness who serves functions as both a lay witness and an

5

expert witness) and offers various topics about which Mr. Meyer will testify as a lay witness. However, it is not currently clear what specific type of expertise Plaintiff claims Mr. Meyer has. Therefore, the Court cannot limit Mr. Meyer's area of expertise at this time, and Defendant's Motion in Limine is denied in this respect.

Regarding limiting Mr. Meyer's testimony to the time period in which he was in the industry, the Court denies Defendant's Motion in Limine. While Mr. Meyer can opine only on matters about which he has personal knowledge, Mr. Meyer's personal knowledge did not end the moment he left the industry. The Court will permit Mr. Meyer to testify at trial consistent with his report and with his deposition. Defendant's argument is better suited for cross-examination, rather than a basis for exclusion.

Finally, Defendant seeks to prevent Mr. Meyer from testifying about (1) Defendant's attempts to copy Plaintiff's product offerings, and (2) "theft of information by a former employee and another incident in Indianapolis involving a principal at Dundas." Consistent with its ruling on Defendant's Motion in Limine No. 5, the Court will preclude Mr. Meyer from testifying about these topics, unless Defendant attempts to cloak itself as an "innocent "party.

Defendant's Motion in Limine No. 8 (Doc. #206)

Defendant seeks to further limit Marshall Honeyman's testimony. First, Defendant notes that Mr. Honeyman likely will testify "on the patent process generally, legal issues/standards, the USPTO examination procedure and certain presumptions given when devices are patents….what a patent is, how you get one, what are the parts/sections of a patent, the basics on patents and patent examiners, and define generic terms…" Defendant generally argues that all of this proposed testimony is improper, a waste of resources, and potentially very prejudicial. The Court cannot rule on admissibility without more specific arguments or more specifically identified pieces of evidence. Thus, the Court will only address evidentiary issues that are specifically discussed.

First, Defendant argues that Mr. Honeyman should be precluded from stating that the Examiner cited a piece of prior art relied upon in Dundas Jafine's invalidity defense.

Defendant does not make any specific arguments as to why this testimony would be improper. Therefore, Mr. Honeyman will be permitted to testify about this issue.

Second, Defendant argues Mr. Honeyman should not be permitted to testify about whether the Patent Examiners properly applied their procedures and legal principles during the examination process. Plaintiff responds that there is a legal presumption that government officials carry out their assigned jobs. Whether the law may presume that government officials do their assigned jobs is distinct from whether government officials *properly* do their assigned jobs. Thus, Mr. Honeyman will be permitted to state whether or not the Examiners applied certain procedures and legal principles during the examination process, but he will not be permitted to state whether or not the Examiners properly did so.

Third, Defendant claims Mr. Honeyman should not be allowed to opine as to whether the recent Supreme Court decision *KSR Int'l v. Teleflex, Inc.*, 550 U.S. 398 (2007) taints the decisions of the Examiners regarding the validity of the patents at issue in this case. The Court agrees, as this would be a legal conclusion. Honeyman will not be permitted to testify about what the *KSR* decision means or how the *KSR* decision affects this case.

Fourth, Defendant asserts Mr. Honeyman should not be allowed to opine that patents are entitled to a presumption of validity. Again, the Court agrees, because this testimony is a legal conclusion.

Finally, Defendant argues that allowing Honeyman to testify will improperly bolster the decisions of the Patent Office and its Examiners. The Court finds that Mr. Honeyman's testimony will do no such thing. Defendant also requests that instead of permitting Honeyman to testify, the Court should show the Federal Judicial Center's video overview of the patent system. The Court will not show this video *instead of* Mr. Honeyman's testimony. Defendant is permitted to offer this video at trial if it so wishes. However, if Defendant offers the video, the Court will allow only the first two parts of the video to be shown, as the Court finds that the third part of the video essentially instructs the jury on the law.

In sum, Defendant's Motion in Limine is granted in part and denied in part.

Defendant's Motion in Limine No. 9 (Doc. #206)

Defendant seeks to exclude evidence that it "stole" a Notre Dame study prepared for Plaintiff regarding the presentation of Plaintiff's dryer vent sets. Plaintiff agrees that it will not accuse Defendant of "stealing" the Notre Dame study or violating any non-disclosure agreement associated with the study. Accordingly, to this extent, Defendant's Motion in Limine is granted.

However, to the extent Defendant's more broadly requests exclusion of the study altogether, the Motion in Limine is denied at this juncture. As Plaintiff points out the study could be used to demonstrate that "(1) a study was done; (2) it was shared with Home Depot; (3) it made certain recommendations; and (4) the new set using Defendant's products utilized some of those same recommendations." Doc. #229, pages 6-7. Thus, the study could serve as relevant evidence for matters such as willful infringement.

Defendant's Motion in Limine No. 10 (Doc. #206)

Defendant seeks to exclude evidence that its products are "unsafe." However, Defendant's discussion focuses only on one of its products, the "ProFlex." Accordingly, the Court will limit its ruling to this product as well, as the Court cannot make rulings on evidence in a vacuum.

In response to Defendant's Motion, Plaintiff agrees that it will not present evidence that the ProFlex failed flame testing and/or to specifically call the ProFlex product "unsafe." Thus, to the extent Defendant seeks exclusion of this evidence, its Motion in Limine is granted.

Defendant's Motion in Limine No. 11 (Doc. #206)

Defendant seeks to exclude evidence that unfairly bolsters the Patent Office's actions which Defendant believes is intended to bolster the validity of the patents in suit. Defendant focuses on only two types of evidence in this Motion in Limine, so the Court will focus only on those two types of evidence as well. The Court is not prepared to rule generally on huge swaths of evidence. Accordingly, Defendant will have to object to other specific evidence raised at trial when Defendant finds something objectionable.

8

First, Defendant wants to exclude evidence that Examiners are experts in "terms of what has been published (known) in the particular classification they are assigned to." The Court will not permit testimony which describes Examiners as experts. The Court finds that the limited probative value of this evidence is outweighed by the potential for undue prejudice and misleading the jury. The Court agrees with Defendant that if this evidence were introduced, jury members may very well believe that they could not overrule a decision rendered by the Patent Office and its Examiners. The fact of the matter is, the Examiners did their job correctly or they did not, and the jurors are going to decide whether the patents are valid, regardless of whether Examiners are experts. However, Plaintiff will be permitted describe the general background and credentials of Examiners.

Second, Defendant seeks to exclude evidence that Examiners properly applied their procedures and legal principles to the patents at issue in this case. As previously discussed, the Court will not permit Plaintiff to testify that the Examiners properly applied their procedures and legal principles to the patents at issue in this case.

Accordingly, Defendant's Motion in Limine is granted in part and denied in part.

Defendant's Motion in Limine No. 12 (Doc. #206)

Defendant seeks to exclude evidence of accessory products that allegedly are not "convoyed sales." For an accessory product to be considered a convoyed sale it "must function together with the patented component in some manner so as to produce a desired end product or result. All the components together must be analogous to components of a single assembly or be parts of a complete machine, or they must constitute a function unit." *Rite-Hite Corp.*, 56 F.3d at 1550. Defendant lists approximately two dozen products it believes should be excluded because it alleges these products not convoyed sales. Plaintiff responds that whether a product is considered a convoyed sale is a determination of fact for the jury. The Court agrees with Plaintiff's position, and thus, Defendant's Motion in Limine is denied.

9

Plaintiff's Motion in Limine No. 1 (Doc. #181)

Plaintiff seeks to preclude from the jury evidence regarding Defendant's laches defense. Plaintiff notes that whether Defendant is entitled to the laches defense is not an issue for the jury to decide. *Paragon Podiatry Laboratory, Inc. v. KLM Laboratories, Inc.*, 984 F.2d 1182, 1190 (Fed. Cir. 1993). Plaintiff also maintains that (1) presentation of evidence about laches will cause jury confusion, (2) that presentation of this evidence will create a "mini-trial," (3) that the Court already has limited Plaintiff's damages, and thus, evidence regarding laches is unnecessary, and (4) that Defendant, substantively, is note entitled to a laches defense.

The Court agrees it must determine whether Defendant is entitled to a laches defense. However, the Court will not decide this issue in a bench trial before the jury is empaneled. Rather, as explained at the PreTrial Conference, the Court will permit introduction of this evidence to the jury, will issue special interrogatories to the jury regarding the factual underpinnings of the laches defense, and then the Court will determine the applicability of the laches defense to this case.

As to Plaintiff's other arguments, the Court finds that they are without merit. First, the Court has confidence in the jurors' abilities and finds that presentation of this evidence will not cause jury confusion. Second, while presentation of this type of evidence may consume trial time, Defendant must be permitted to argue its defenses at trial. Third, whether the Court already has limited Plaintiff's damages has no bearing on whether the damages can be limited further due to laches. Finally, whether Defendant, as a factual matter, is entitled to a laches defense is not a proper argument to raise in a Motion in Limine. Rather, this type of argument should be submitted during trial. Accordingly, Plaintiff's Motion in Limine is denied.

Plaintiff's Motion in Limine No. 2 (Doc. #182)

Plaintiff seeks to exclude the following evidence: (1) references to Jordan Industries, which is Plaintiff's parent company, (2) reference to the price Jordan Industries paid to acquire Plaintiff from Mr. Stephen Meyer, (3) Mr. Meyer's financial condition and personal assets, (4) Jordan Industries' financial condition, (5) negative

comments about private equity and venture capital companies, and (6) testimony that the owner of Jordan Industries moved from Kansas City to Chicago.

As Jordan Industries is a completely separate legal entity from Plaintiff, the Court finds that all of this evidence is wholly irrelevant to the issues in this case. Nonetheless, the Court will address Defendant's various arguments.

First, Defendant argues Jordan Industries approves litigation Plaintiff can pursue and has the financial resources to fund such litigation, which Defendant argues is relevant to its laches defense. The Court is not persuaded. Jordan Industries is under no obligation to give money to Plaintiff to pursue litigation. Accordingly, whether Jordan Industries has the ability to fund Plaintiff's litigation is irrelevant.

Next, Defendant maintains that Jordan Industries' business is relevant to the history of the industry and to the evolution of Deflecto. While that may or may not be true, Defendant has not demonstrated how it is relevant to the actual claims and defenses at issue in this case.

Defendant also claims the price which Jordan Industries paid Mr. Meyer to acquire Plaintiff is relevant to Plaintiff's claim of market erosion and to Defendant's damages theories as it demonstrates "the worth of Deflecto's air distribution business…" However, when Jordan Industries purchased Plaintiff it paid for far more than just the '181 and '023 Patents. Thus, whatever the purchase price was, it has almost no probative value regarding the issues in this case.

Finally, Defendant argues that at one time Deflecto *technically* was one of Mr. Meyer's personal assets, and it would be absurd to not be able to talk about Deflecto at trial. The Court trusts that Plaintiff's intention with this Motion in Limine was not to broadly exclude any evidence regarding Deflecto. Rather, Plaintiff is seeking exclusion of evidence regarding Mr. Meyer's current financial condition. The Court finds this evidence is irrelevant, and thus, inadmissible.

In sum, Plaintiff's Motion in Limine is granted.

Plaintiff's Motion in Limine No. 3 (Doc. #183)

Plaintiff seeks to exclude evidence denigrating the Patent Office or its Examiners. Specifically, Plaintiff seeks to exclude (1) evidence characterizing Patent Office

11

procedures as shoddy and Examiners as overwhelmed, lazy, careless, under-trained or otherwise unable or unwilling to examine patents in a careful manner; (2) evidence characterizing the patent prosecution process as a "deal" or "backdoor negotiation" between Plaintiff and the Patent Office, potentially to facilitate Examiner's workload; and (3) evidence disputing Marshall Honeyman's testimony.

Defendant agrees that it will not present evidence that Patent Office procedures are shoddy or that Examiners are overwhelmed, lazy, careless, under-trained or otherwise unable or unwilling to examine patents in a careful manner. Defendant further agrees that it will not present evidence that the patent prosecution process is a backdoor negotiation or that Examiners cut deals with patent applicants in order to alleviate their workloads. Thus, to the extent Plaintiff seeks exclusion of this type of evidence, the Court grants Plaintiff's Motion in Limine.

However, if Defendant wishes to elicit testimony that there is a "dialogue" between the Patent Office and a patent applicant during the patent prosecution process, the Court will permit Defendant to do so. Additionally, the Court will allow Defendant to dispute Mr. Honeyman's testimony, provided Defendant does not do so in a manner prohibited by the above paragraph.

In sum, Plaintiff's Motion in Limine is granted in part and denied in part.

Plaintiff's Motion in Limine No. 4 (Doc. #184)

Plaintiff seeks to exclude evidence, documents, and witnesses Defendant allegedly did not timely disclose. First, Plaintiff maintains that Defendant only listed four witnesses in its Rule 26 Disclosure and that Defendant never supplemented this list. Plaintiff also argues that some of these witnesses' trial testimonies should be limited to certain topics. For example, Paul Jafine was offered as a witness who could testify about "the accused products, including the design, development, manufacture, marketing, sale and advertising of those products." However, Plaintiff claims that during his deposition, Mr. Jafine asserted that he did not have knowledge about the design and development of the accused products. Accordingly, Plaintiff argues Defendant should not be permitted to "swap in a never-before identified witness to make up for owner Paul Jafine's lack of knowledge."

12

Second, Plaintiff contends Defendant has produced only a small number of documents in this case, and that Defendant should not be permitted to introduce as evidence previously undisclosed documents.

The Court is not persuaded by Plaintiff's arguments. To merit exclusion at trial, Plaintiff will have to demonstrate that the introduction of evidence will cause unfair surprise and prejudice. *Troknya v. Cleveland Chiropractic Clinic*, 280 F.3d 1200, 1205 (8th Cir. 2002). Plaintiff has not made that showing at this juncture, and therefore, Plaintiff's Motion in Limine is denied.

Plaintiff's Motion in Limine No. 5 (Doc. #185)

Plaintiff seeks (1) to set the number of jurors to be empaneled at six and (2) to allow each party to conduct a 3-5 minute informative "mini-opening" before voir dire.

With respect to Plaintiff's first request, the Court determined at the Pretrial Conference held on December 11, 2015, that seven jurors will be empaneled.

The Court denies Plaintiff's second request. The Court finds that this type of "mini-opening" could be improperly used by Counsel to argue their cases. If the parties would like to prepare a joint statement to be read to the jury, the Court will consider it.

Thus, Plaintiff's Motion in Limine is denied.

Plaintiff's Motion in Limine No. 6 (Doc. #186)

Plaintiff seeks to exclude out of court statements made by third party Home Depot. Specifically, Plaintiff argues Defendant should be precluded from introducing evidence that "(1) the Dundas corporate representative witness heard that another Dundas employee heard a Home Depot person say that Home Depot was unhappy with Plaintiff; (2) Home Depot promised Defendant it would get a certain amount of business because it wanted two suppliers, (3) Home Depot made decisions about vendors and products for certain reasons, and (4) years ago Home Depot invited Defendant to take over the Home Depot business." Doc. #186, page 3. Plaintiff argues all of these statements constitute inadmissible hearsay.

Defendant, on the other hand, argues that while these statements are hearsay, they are admissible. Defendant argues that many of these statements would be

admissible pursuant to Federal Rule of Evidence 807, which is the Residual Exception to Hearsay.  This rule provides that certain hearsay statements are admissible if they satisfy several requirements, one of which the statement "is more probative on the point for which it is offered than any other evidence that the proponent can obtain through reasonable efforts."  Defendant claims it does not want to irritate Home Depot, one of its biggest customers, by pulling them into court and deposing them, and thus, Defendant cannot obtain this evidence through reasonable efforts.  While Defendant may find itself in a difficult position, that has no bearing on whether Defendant can obtain the evidence through reasonable efforts.

Defendant also contends that some hearsay statements would be admissible under Federal Rule of Evidence 803(6), because Defendant has business records that discuss news Defendant received from Home Depot.  However, the business records exception does not cure the "hearsay within hearsay" problem with some of the statements Plaintiff seeks to preclude.  Nor do the business records Defendant cites appear to cover all of the categories of statements Plaintiff seeks to exclude.  Thus, at this juncture, the Court finds that the categories of statements Plaintiff listed are inadmissible hearsay, and Plaintiff's Motion in Limine is granted.  Defendant is free to renew its objections at trial and justify why the statements listed above are admissible evidence.

<u>Plaintiff's Motions in Limine No. 7, No. 8, and No. 9 (Doc. #187, Doc. #188, Doc. #189)</u>

Plaintiff seeks to exclude evidence of items that could be considered acceptable non-infringing alternatives.  In so doing, Plaintiff focuses on three categories of items: (1) Dundas's Modified ProMax, ProShield, and MaxiFlow; (2) third party products; and (3) products that did not exist during the hypothetical negotiation in 2007.  Plaintiff lodges similar arguments against each product category.

   A. Undisclosed

Plaintiff argues that during discovery Defendant did not disclose a non-infringing alternatives theory or produce third party dryer vents, and thus, this evidence should be precluded from trial.

14

As a preliminary matter, it appears that discovery *has* been produced regarding all of these items. Next, Defendant notes that Plaintiff's own damages expert addressed in his report the ProShield and third party dryer vents as products deemed to be infringing and/or unacceptable alternatives to Plaintiff's products. Doc. #240. Additionally, experts for both Plaintiff and Defendant discussed whether the Maxi-Flow was an acceptable, non-infringing alternative. Doc. #141-1, Doc. #240-1. The Court finds Plaintiff can hardly claim surprise or harm with respect to these products.

Second, Defendant points out that the Modified ProMax has been the subject of this lawsuit and that Defendant's position has been that the Modified ProMax does not infringe Plaintiff's patents. Thus, Plaintiff cannot claim surprise or harm, now that the Court has determined the Modified ProMax is non-infringing, when Defendant alleges the Modified ProMax is an acceptable, non-infringing alternative.

B. Relevance

First, Plaintiff argues these various products are not relevant because they have nothing to do with whether the Accused Products infringe Plaintiff's patents. While the various products may not be relevant to infringement, they are relevant to Plaintiff's damages argument. In order to recover lost profits, Plaintiff must prove "'causation in fact,' establishing that 'but for' the infringement, he would have made additional profits." *Grain Processing Corp. v. American Maize-Products Co.*, 185 F.3d 1341, 1349 (Fed. Cir. 1999). The "Panduit Test" is an "accepted…but non-exclusive way for a patentee to prove entitlement to lost profit damages." *Rite-Hite Corp. v. Kelley Co., Inc.*, 56 F.3d 1538, 1545 (Fed. Cir. 1995). Under the *Panduit* Test, "a patentee [must] establish: (1) the demand for the patented product; (2) absence of acceptable non-infringing substitutes; (3) manufacturing and marketing capability to exploit the demand; and (4) the amount of the profit it would have made." *Id.* (citing *Panduit Corp. v. Stahlin Bros. Fibre Works, Inc.*, 575 F.2d 1152 (6th Cir. 1978)). Because these products could be considered "acceptable, non-infringing alternatives," they are relevant evidence.

Second, Plaintiff argues that some of the products are not relevant because they did not exist during the hypothetical negotiation in 2007. While a hypothetical negotiation is part of the damages determination under a reasonable royalty theory, it is

15

not a requirement under a lost profits calculation. *Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324-25 (Fed. Cir. 2009). Whether products were in existence during the hypothetical negotiation in 2007 may have some bearing on a reasonable royalty calculation, but it does not have bearing on a lost profits analysis. Thus, the products' existence, or lack thereof, in 2007 does not mean that these products are irrelevant evidence.

  C. Mini Trial

Plaintiff argues that if Defendant is permitted to introduce all of these products as evidence of acceptable non-infringing alternatives, then Plaintiff would be forced to put each item on trial for infringement to prove Plaintiff's damages case. Plaintiff argues this would result in a series of mini-trials.

The Court is not persuaded by Plaintiff's argument. It is Plaintiff's burden to prove it is entitled to lost profits. As part of that burden, Plaintiff must demonstrate the lack of acceptable, non-infringing alternatives. *Rite-Hite Corp.*, 56 F.3d at 1545. Thus, Plaintiff may have to expend time at trial arguing that certain products are not acceptable, non-infringing alternatives.

  D. Prejudice and Confusion

Plaintiff also argues that introduction of this evidence is unduly prejudicial and confusing because it would (1) mislead the jury into applying the details of these products to the products accused of infringing and (2) confuse the jury by introducing products that were created by Defendant years after they allegedly began infringing Plaintiff's patents. The Court does not find either of these arguments persuasive. Rather, the Court has every confidence the jury will be able to handle the variety of evidence presented at trial.

Plaintiff's Motion in Limine No. 10 (Doc. #190)

Plaintiff seeks to further limit Dr. Terry Faddis's testimony. First, Plaintiff argues Dr. Faddis should not be permitted to testify about willfulness because it is an ultimate legal conclusion and because Dr. Faddis did not discuss willfulness in his expert

16

Case 4:13-cv-00116-ODS   Document 261   Filed 12/22/15   Page 16 of 20

reports. Defendant agrees that Dr. Faddis will not testify about willfulness. Therefore, to this extent, Plaintiff's Motion in Limine is granted.

Second, Plaintiff maintains Dr. Faddis should not be allowed to testify about infringement because it is an ultimate legal conclusion and Dr. Faddis formed his opinion based on legal principles explained to him by counsel. Defendant responds that "testimony on the ultimate issue of infringement is permissible in patent cases." *Symbol Techs., Inc. v. Opticon, Inc.*, 935 F.2d 1569, 1575 (Fed. Cir. 1991) (internal citation omitted). The Court agrees that Dr. Faddis should not be permitted to make ultimate legal conclusions. As an example, Dr. Faddis will be permitted to assert something such as, "The Original ProMax does not include a plurality of attachment projections that extend from and are integral with the outer edge of the grid portion. The attachment projections of the Original ProMax extend from a pair of arms for the sidewalls and a rear plate. Each of the arms and the rear plate extend from the outer edge of the grid portion." Doc. #107-7, ¶ 95. However, Dr. Faddis will not be permitted to testify that, "Thus, for this reason, it is my opinion that the Original ProMax does not literally infringe claim 13 of the '023 patent." Doc. #107-7, ¶ 96. The cited portions from Dr. Faddis's expert reports are used for illustrative purposes; they do not comprise an exhaustive list of what the Court will or will not permit Dr. Faddis to testify to. Accordingly, to this extent, Plaintiff's Motion in Limine is granted in part and denied in part.

Third, Plaintiff contends Dr. Faddis should be precluded from testifying about the patent process because Dr. Faddis has not been offered as an expert on this subject and because Dr. Faddis does not opine on this topic in his expert reports. Defendant agrees that Faddis will not testify about the patent process in the manner in which Marshall Honeyman likely will testify about the patent process, in that Dr. Faddis will not be offered to talk about how the Patent Office works or its procedures in a general manner. To this extent, Plaintiff's Motion in Limine is granted.

However, Defendant observes Dr. Faddis is the named inventor of several patents, and consequently, has personal knowledge about patents and the prosecution process. Defendant argues Dr. Faddis should be allowed to testify about the patents at issue in this case and their respective prosecution histories. To the extent Defendant

17

means Dr. Faddis should be permitted to testify that the Accused Products do or do not meet the claim limitations of the '181 and '023 patents as discussed above, the Court will permit Dr. Faddis to testify in this manner. *See e.g.* Doc. #107-7, ¶ 95. Otherwise, it is not entirely clear what specifically Defendant is arguing Dr. Faddis should be allowed to testify about, and the Court will not guess. Thus, Defendant's position is rejected at this juncture.

Plaintiff's Motion in Limine No. 11 (Doc. #191)

Plaintiff seeks to exclude a European Patent written entirely in German. Plaintiff argues that only English language documents or official translations may be used in United States District Courts. The Court will not permit a European Patent without an English translation to be admitted into evidence at trial. Accordingly, to this extent, Plaintiff's Motion in Limine is granted.

Plaintiff also claims Defendant has not produced a translated copy of this European Patent and that this European Patent was attached to Dr. Faddis's report without any English translation, and therefore, Dr. Faddis should not be permitted to discuss the European Patent at trial. However, the Court's review of the Record indicates that Defendant did produce English translations of the European Patent and that English translations were included with Dr. Faddis's Expert Report. Doc. #191-2, Doc. #257-1. Thus, to this extent, Plaintiff's Motion in Limine is denied.

Plaintiff's Motion in Limine No. 12 (Doc. #192)

Plaintiff seeks to exclude evidence of (1) a 2008 letter it sent to some of its customers and (2) Defendant's testimony regarding Plaintiff's customers' responses to this letter.

Plaintiff argues this evidence is hearsay. Plaintiff is only partly correct. The letter itself is not hearsay. However, Defendant's testimony about how Plaintiff's customers responded to this letter is hearsay. Defendant has not identified any hearsay exception that would make this second category of evidence admissible

Plaintiff also argues this is irrelevant evidence. Again, Plaintiff is only partly correct. Currently before the Court is a draft of a letter and a letter that was sent to

18

Lowe's. While Plaintiff admits it sent this letter to some of its customers, Plaintiff does not explicitly state it sent this letter to Home Depot. A draft of a letter and a letter Plaintiff sent to Lowe's has no relevance to Home Depot's business decisions. However, the draft and the letter do have relevance to Lowe's business decisions, and thus, to that extent, they are admissible evidence.

Finally, Plaintiff argues that the letter could be misleading and its introduction would waste the Court's time. The Court finds that the jury can determine what the letter says and its consequent meaning. The Court also finds that presenting this evidence at trial would not consume a significant amount of time.

In sum, Plaintiff's Motion in Limine is granted in part and denied in part.

Plaintiff's Motion in Limine No. 13 (Doc. #193)

Plaintiff seeks to exclude evidence of consumer complaints regarding its products. In making this request, Plaintiff has attached two consumer complaints as exhibits. Doc. #193-3, Doc. #193-4. Plaintiff argues that these complaints are inadmissible hearsay, irrelevant, unduly prejudicial, and would be a waste of time if introduced into evidence. The Court's review of the exhibits indicates the complaints were kept in the course of regularly conducted activity of Plaintiff, and thus, qualify as an exception to hearsay pursuant to Federal Rule of Evidence 803(6). Additionally, the Court finds that the customer complaints are relevant to a determination of obviousness. In particular, obviousness may involve secondary considerations, one of which is "commercial success." *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 406 (2007). The Court also does not find that these consumer complaints are unduly prejudicial.

Despite all of this, the Court agrees with Plaintiff that introduction of these consumer complaints would constitute a waste of time. Absent a showing that there are a disproportionate number of customer complaints, the Court finds that probative value of introducing two customer complaints is outweighed by the potential wasting of time to do so. Accordingly, Plaintiff's Motion in Limine is granted.

Plaintiff's Motion in Limine No. 14 (Doc. #194)

    Plaintiff seeks to exclude a document from the internet that appears to be a partial list of exhibitors expected to appear at the 2007 Air-Conditioning, Heating, Refrigerating Exposition.  Plaintiff argues that this document is unauthenticated and irrelevant.

    Defendant notes that archived webpages produced by the Wayback Marchine, when accompanied by an affidavit from an Internet archive employee can qualify as authenticated, non-hearsay evidence.  *Sam's Riverside, Inc. v. Intercon Solutions, Inc.*, 790 F. Supp. 2d 965, 981 (N.D. Ia. 2011).  Defendant asserts it has obtained such an affidavit from a Wayback Machine employee with respect to the list of exhibitors.  Thus, it appears that Defendant has sufficiently authenticated the document.

    Despite this, the Court finds that the document is not probative of anything. While Defendant argues that the evidence is relevant to its laches defense, the Court agrees with Plaintiff that, at best, it shows Plaintiff intended to attend the Exposition.  It does not show that any of Plaintiff's representatives actually attended.  More importantly, it does not demonstrate what Plaintiff saw, if anything, at the Exposition. Accordingly, the Court grants Plaintiff's Motion in Limine.

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, SENIOR JUDGE
DATE: December 22, 2015    UNITED STATES DISTRICT COURT

20

Case 4:13-cv-00116-ODS   Document 261   Filed 12/22/15   Page 20 of 20